IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ORLANDO MARTIN,

    Plaintiff,                        Case No. 2:05-cv-00557 ALA (P)

  vs.

ALVARO C. TRAQUINA, et al.,

    Defendants.                     ORDER

_____/

      Plaintiff Orlando Martin, a prisoner confined at California State Prison-Solano ("CSP-Solano"), has brought a *pro se* civil rights action under 42 U.S.C. § 1983 against Alvaro Traquina, M.D., CSP-Solana's Chief Medical Officer. Mr. Martin asserts that Dr. Traquina violated his Eighth Amendment right against cruel and unusual punishment by delaying and denying him medical treatment for his painful toenail condition. Dr. Traquina moves for summary judgment. For the reasons state below, the motion for summary judgment is granted.

**I**

**A**

      Mr. Martin entered CSP- Solano on November 12, 2002. On arrival he asked prison officials to issue him soft shoes, because the standard-issue hard boots hurt his feet. The officials nevertheless assigned him hard boots, which caused his feet to swell and become

1

blistered.

On April 10, 2003 Dr. Oscar Mar examined Mr. Martin and requested that he be examined by a podiatrist. On April 24, 2003 Mr. Martin was examined again by a doctor. He was diagnosed with "buildup" on both of his big toes. The examining doctor added a second request that he see a podiatrist. Additional requests for Mr. Martin to see a podiatrist were made in May, June, July, and September of 2003.

On June 3, 2003, Mr. Martin wrote a letter to Dr. Traquina. According to Mr. Martin's verified Second Amended Complaint Dr. Traquina was, as CSP-Solano's Chief Medical Officer, "responsible for arranging medical care for prisoners . . . and specialized care outside the prison." Mr. Martin's letter stated:

> I have signed-up to see the . . . Orthopedic doctor since much, I have . . . Blistes [sic] up both of my feet, I've been here seven months in the C.D.C. system, and still have not seen them, I talk with the "Annex" doctor's and they say they can't help me about my feet . . . the boots i[s] making my feet very bad, and the pain is getting worser . . . I've tried my counsol [sic] . . . [and] annex doctor's, but know [sic] one seems to help, so now I come to you for your professional help.

Second Amended Complaint, Exh. 20. Upon receiving the letter, Dr. Traquina made a copy of it and sent it to a Dr. Toppenberg so that he could interview Mr. Martin. Second Amended Complaint, Memorandum of Points and Authorities, at 3. Mr. Martin was first examined by a podiatrist on September 12, 2003.

On October 27, 2003, Dr. Osborn surgically removed both of Mr. Martin's big toenails. Mr. Martin suffers from Hepatitis-C, and therefore is not supposed to take Motrin because it hurts his liver. Mr. Martin told Dr. Osborn before the toenail-removal surgery that he had Hepatitis-C, but Dr. Osborn nevertheless prescribed him Motrin for post-operation pain. Dr. Osborn did not prescribe Mr. Martin any antibiotics, open-toed sandals, a wheelchair, crutches, or a cane. Nor did Dr. Osborn arrange for Mr. Martin to be transported back to his living quarters or issue Mr. Martin a medical chrono, which is a form that would have instructed prison personnel to bring Mr. Martin's food to him in his quarters for one week.

Because Mr. Martin was not issued a wheelchair, given a ride back to his living

1  quarters, or issued a medical chrono, he was forced to walk almost half a mile back to his prison
2  building after the surgery, and to walk to the dining room for his meals during the ensuing week.
3  These trips caused Mr. Martin extreme pain and bleeding in his feet, and caused his wounds to
4  remain open. On November 3, 2003, at Mr. Martin's follow-up medical exam, Dr. Dwayne
5  Highsmith determined that the post-surgical site had become infected and prescribed antibiotics
6  and additional pain medication. Mr. Martin later developed a bone spur on his right big toe,
7  which had not been there before the surgery.

8        On each of the three days immediately following his surgery, Mr. Martin traveled
9  to the prison clinic where Ms. Yen Dechant worked as a nurse. There, he asked Ms. Dechant for
10 medical treatment to alleviate his pain. He showed her his toes, which were bleeding, and she
11 gave him fresh bandages. She did not send him to see a doctor. She told him he had to wait to
12 see a doctor until his followup visit on November 3, 2003. She stated that "the bleeding [was]
13 normal" and would "stop in due time." Ms. Dechant stated in her declaration that Mr. Martin's
14 feet were not infected when she examined them on October 29, 2003.   She examined them again
15 on November 3, 2003. On that date she noticed that "[h]is big toe had developed some redness
16 and was slightly swollen with a small amount of drainage." Dechant Dec., ¶ 6.  She further
17 alleged that she did not call a doctor on November 3, 2003 because Mr. Martin was scheduled to
18 see a doctor later that morning for his follow-up exam and there was no emergency that would
19 warrant calling the doctor immediately. *Id*.

20       On January 16, 2004, Dr. Highsmith examined Mr. Martin and determined that he
21 was still suffering from pain in his right toe. Dr. Daniel Bunnell examined Mr. Martin on
22 February 4, 2004. He concluded that there was no abnormality of the bone suggesting
23 osteomyelites. On the same date, , Dr. Traquina examined Mr. Martin and noted that he was still
24 suffering from pain in his toe, although it had healed and showed no signs of infection.

25       On April 23, 2004, Mr. Martin was diagnosed with a bone spur on his right big
26 toe.  The next day, on April 24, 2004,  Dr. Chen requested an "URGENT" consultation for Mr.

Martin. Mr. Martin received a consultation on June 4, 2004. Dr. Chen then issued an order authorizing the bone surgery itself, dated June 22, 2004, classifying the surgery as "routine." Defendant's Motion for Summary Judgment, Exh. F. Mr. Martin did not receive the bone spur removal surgery for another fifteen months. The surgery was finally performed in July 2005.

**B**

Mr. Martin filed at least two administrative complaints at CSP-Solano between 2002 and 2005. He filed the first complaint in December 2003, requesting additional medical care for his feet and calling for an administrative investigation into the medical care he received from Dr. Osborn and Ms. Dechant. On February 3, 2004, Dr. Traquina issued a Second Level response to the complaint. The response stated that Mr. Martin's request was partially granted on the ground that Mr. Martin had already received appropriate medical care, and that Dr. Traquina had interviewed Mr. Martin and 'verified that both feet were well healed and there were no signs of infection." "Additionally," Dr. Traquina said in the response, "I advised you to have a follow-up consultation with the podiatrist to discuss the x-rays results and to request soft shoes chrono." Dr. Traquina concluded that Mr. Martin had "failed to provide evidence that proves that Dr. Osborn and RN Deschant [sic] acted unprofessionally or have neglected your medical care." Second Amended Complaint, Exh. 10.

On April 7, 2004, Mr. Martin filed his second complaint: a CDC form entitled "Reasonable Modification or Accommodation Request." He wrote on the form that the toenail removal surgery "caused me to get a 'bone spur' in my 'right toe,'" and complained of blisters and pain in his foot. He requested "an[] emergency appointment with an[] outside podiatry doctor to remove the bone spur. . . ." Second Amended Complaint, Exh. 12.

On June 7, 2004, Dr. Traquina issued a Second Level response to the April 7, 2004 complaint, stating "your appeal is partially granted in that you are receiving appropriate treatment for your post-op complications from Dr. Highsmith, who is one of our consulting physicians." Exh. 12. The response explained that on April 23, 2004 Dr. Chen had examined

4

1  Mr. Martin, "noted that your wound was healing well, with no sign of infection," and concluded

2  that the results of an x-ray were "negative." Dr. Traquina also stated that Dr. Highsmith had

3  noticed on June 4, 2004 that Mr. Martin had "a slight dorsal deformity of [his] right toe," and

4  that Mr. Martin was scheduled to see Dr. Highsmith again in thirty days. Exh. 12. On July 19,

5  2004, Mr. Martin's complaint was denied at the Director's level. Exh. 12.

**C**

Mr. Martin brought a civil rights action under 42 U.S.C. § 1983 against Alvaro Traquina, M.D., CSP-Solana's Chief Medical Officer, Randall Osborn, D.P.M., a podiatrist under contract with CSP-Solano,1 and Yen Dechant, a registered nurse employed by CSP-Solano. Mr. Martin asserts that Defendants violated his Eighth Amendment right against cruel and unusual punishment by delaying and denying him medical treatment for his painful toenail condition. On September 21, 2006, defendants DeChant, Osborn and Traquina, M.D., filed motions for summary judgment. *See* Docket Nos. 50-52. On August 3, 2007, this court granted summary judgment in favor of Ms. Dechant and Dr. Osborn, and in favor of Dr. Traquina to the extent that Mr. Martin claims Dr. Traquina failed to obtain a soft shoe chrono for him. Summary judgment was denied with respect to Mr. Martin's claim that Dr. Traquina was deliberately indifferent by delaying Mr. Martin's bone-spur removal surgery. The Court explained:

> Dr. Traquina's response provides no explanation as to why eleven months have passed without Mr. Martin receiving the bone spur-removal surgery that Doctor Ch[e]n stated should have been done within twenty-four hours. This evidence is sufficient to create a triable issue of fact as to whether Dr. Traquina acted with deliberate indifference. *See Farrow*, 320 F.3d 1235, 1246-47 (11th Cir. 2003) (triable issue of fact existed as to deliberate indifference, where plaintiff prisoner suffered a"substantial and inordinate delay" in receiving dentures and his dentist was aware he was experiencing pain, bleeding gums, and weight loss due to lack of dentures); *Hunt v. Dental Department*, 865 F.2d 198, (9th Cir. 1989) ( defendant prison medical administrator, dentist, and medical assistant not entitled to summary judgment on plaintiff prisoner's Eighth-Amendment claim arising from a three-month delay in receiving dentures, where defendants knew the lack of dentures was causing severe pain, weight loss, and permanent damage to plaintiff's teeth); *Hathaway v. Coughlin*, 841 F.2d 48, 50-51 (2nd Cir. 1988) (reversing summary judgment in favor of defendant prison administrators on plaintiff prisoner's claim that defendants acted with deliberate indifference in causing a delay of over

                two years in arranging for surgery to correct broken pins in plaintiff's hip).

Doc. No. 65.

     Dr. Traquina filed a second motion for summary judgment after the pretrial statements were filed (Doc. No. 77). Dr. Traquina argued that, because Mr. Martin had failed to list any trial witnesses in his pretrial statement, he would be unable to prove at trial that he suffered from a serious medical condition. Dr. Traquina also argued that Mr. Martin would be unable to authenticate any of his exhibits at trial because he did not intend to call any witnesses. The Court denied this motion as moot because it granted Mr. Martin leave to amend his pretrial statement to add witnesses and also leave to take discovery of expert witnesses (Doc. No. 81). The Court also allowed defendant "120 days from the date of this order to file and serve a dispositive motion related to discovery of Plaintiff's two witnesses, Dr. Chen and Dr. Dwayne Highsmith." (Doc. No. 86).

        On April 22, 2008, Dr. Traquina filed a third motion for summary judgment, as to the remaining claim. Dr. Traquina asserts: (1) Dr. Traquina did not cause any delay of Mr. Martin's bone spur surgery; delay of Mr. Martin's surgery was caused by circumstances beyond Dr. Traquina's control; (2) Mr. Martin's bone spur was not a serious medical condition; (3) Assuming, arguendo, that Dr. Traquina caused a delay in Mr. Martin's bone spur surgery, Dr. Traquina was not aware that delay of Mr. Martin's routine and elective surgery would cause Mr. Martin serious harm; (4) Assuming, arguendo, that Dr. Traquina caused a delay in Mr. Martin's bone spur surgery, the delay did not cause Mr. Martin any harm; and (5) Mr. Martin cannot establish a genuine issue of material fact with expert testimony.

## II

### A

     Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted in favor of a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

6

1    genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
2    of law."  A party's motion for summary judgment must be granted "after adequate time for
3    discovery and upon motion . . . against a party who fails to make a showing sufficient to
4    establish the existence of an element essential to that party's case, and on which that party will
5    bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

6    "On summary judgment the inferences to be drawn from the underlying facts contained in
7    such materials must be viewed in the light most favorable to the party opposing the motion."
8    *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  "The moving party bears the initial
9    burden to demonstrate the absence of any genuine issue of material fact."  *Horphag Research*
10   *Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).  "Once the moving party meets its initial
11   burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as
12   otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."  *Id*.
13   (internal quotation marks omitted).

14   Where the party resisting a motion for summary judgment is *pro se*, the court "must
15   consider as evidence in his opposition to summary judgment all of [his] contentions offered in
16   motions and pleadings, where such contentions are based on personal knowledge and set forth
17   facts that would be admissible in evidence, and where [he] attested under penalty of perjury that
18   the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d 918,
19   923 (9th Cir. 2004) (holding that allegations contained in a *pro se* plaintiff's verified pleadings
20   must be considered as evidence for purposes of summary judgment).

21   Here, Mr. Martin's complaint is verified and, thus, will be considered as evidence for
22   purposes of summary judgment.  Mr. Martin filed an opposition to Defendant's motion for
23   summary judgment (Doc. No. 106).  He did not attest under the penalty of perjury to any of the
24   contentions he set forth in this document.
25   /////
26   /////

**B**

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*citing Estelle v. Gamble*, 429 U.S. 97, 104, (1976). In the Ninth Circuit, the test for deliberate indifference consists of two parts. *Id.* (*citing McGuckin v. Osborn*, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *Id.* (*citing Estelle*, 429 U.S. at 104). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. *Id.* This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.* Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (*quoting Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir.1988)). Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id.* (*citing Estelle*, 429 U.S. at 105). A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. *Id.* at 1060. If the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." *Id.* (citations omitted).

Mr. Martin claims that: (1) pursuant to California Administrative Code, title 15, section 3350 (b) (1), (4), and (5), and CDCR's Health Care Services Request Form, form CDC 7362, the delay in his surgery was too long, and (2) that Dr. Traquina was responsible for the eleven month delay in Mr. Martin's surgery. Mr. Martin does not present evidence to support

either contention.

Mr. Martin contends that the delay in his surgery was too long according to California Administrative Code, title 15, section 3350 (b) (1), (4), and (5), and CDCR's Health Care Services Request Form, form CDC 7362, attached as exhibit 42 to Mr. Martin's complaint. California Administrative Code, title 15, section 3350 (b) (1), (4), and (5), entitled Provision of Medical Care and Definitions, provides:

> (b) For the purposes of this article, the following definitions apply:
> (1) Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care.
> . . .
> (4) Severe pain means a degree of discomfort that significantly disables the patient from reasonable independent function.
> (5) Significant illness and disability means any medical condition that causes or may cause if left untreated a severe limitation of function or ability to perform the daily activities of life or that may cause premature death.

The regulations establish no time-limits for "routine" medical care. The regulations do confirm that Mr. Martin's doctors were authorized to classify his bone spur as "medically necessary," which in this case, Mr. Martin's doctors did not do. Further, CDCR's Health Care Services Request Form, a CDC 7362 form, is a form to be completed by inmates to request medical services. The form to be filled out by physicians, a CDC 7243 form, which Dr. Chen used to request authorization for Mr. Martin's surgery (Defendant's Motion for Summary Judgment, Exh. F), sets forth no time requirements for requests for routine medical procedures.

Here, the record indicates that Mr. Martin's surgery was not classified as "urgent." On April 24, 2004, Dr. Chen prepared a Physician Request for Services ("RFS"), a CDC 7243 form, requesting that Mr. Martin consult with Dr. Highsmith concerning surgery on a possible bone spur on his right great toe. Dr. Chen marked this RFS as "urgent." Defendant's Motion for Summary Judgment, Exh. B. This RFS, however, was a request for urgent podiatry *consultation*, not urgent surgery. Mr. Martin received the prescribed consultation on June 4, 2004. Id. Mr. Martin does not challenge the delay in receiving this "urgent" consultation. Dr.

1    Chen's RFS authorizing the bone surgery itself, dated June 22, 2004, classifies the surgery as
2    "routine."  Defendant's Motion for Summary Judgment, Exh. F.  This RFS did not indicate that
3    the surgery was urgent or should be performed within a specified time limit.   Based on the
4    record, no reasonable juror would conclude that the surgery itself was "urgent," but rather that
5    the consultation ordered on April 24, 2004 was classified as "urgent."
6            In his motion for summary judgment, Dr. Traquina argues that he did not cause
7    any delay in Mr. Martin's bone spur surgery.  The original surgery date was set for August 20,
8    2004.  Dr. Traquina asserts that date was delayed for the following reasons, all of which were out
9    of his control: (1) the contracted for surgical facility was unavailable for the original date set for
10   surgery; (2) there was a backlog of six months for podiatry consultants; (3) the contract between
11   CSP Solano and the Northern Solano Surgery Center expired on September 30, 2004, causing a
12   backlog in outpatient surgeries, further delaying Mr. Martin's already postponed surgery.
13   Traquina Decl., ¶ 10.
14            In his opposition to the motion for summary judgment, Mr. Martin asserts that Dr.
15   Traquina could have contacted a different hospital and conduct the surgery elsewhere.  Plaintiff's
16   Opposition to Defendant's Motion for Summary Judgment at 5.   Mr. Martin does not present any
17   other evidence indicating Dr. Traquina caused any delay of Mr. Martin's bone spur surgery.  To
18   avoid summary judgment, Mr. Martin must present  some "'significant probative evidence
19   tending to support'" the allegations.  *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 971
20   (9th Cir.1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).
21   Here, Mr. Martin's opposition to the motion for summary judgment was not verified.  He presents
22   no other admissible evidence to support his claim that Dr. Traquina caused the eleven month
23   delay in his surgery.
24        Therefore, Dr. Traquina is entitled to judgment as a matter of law.
25   /////
26            Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Traquina's motion for summary judgment is GRANTED.

/////

DATED: June 12, 2008

                                        /s/ Arthur L. Alarcón
                                        UNITED STATES CIRCUIT JUDGE
                                        Sitting by Designation